UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKHAWK NETWORK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COMPUTER SERVICES, INC., et al.,<br><br>Defendants. | Case No.  3:23-mc-80303-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 18 |

Blackhawk Network, Inc. ("Blackhawk") moves to compel the arbitration of JC Steel Targets, Inc. ("JC Steel") and Computer Services, Inc. ("CSI") in a pending arbitration filed with the American Arbitration Association.  (Dkt. Nos. 1; 18.)[1]  After carefully considering the parties' submissions, including Blackhawk's supplemental submission, and having had the benefit of oral argument on July 25, 2024, the Court DENIES the motion to compel CSI to arbitration.  Claim preclusion prevents Blackhawk from compelling CSI to arbitration, as a Washington state court already twice denied Blackhawk's motions to compel CSI to arbitration in a lawsuit involving the same underlying facts.   As JC Steel has not appeared in the action, and Blackhawk has not yet obtained its default, the Court sets a status conference for August 8, 2024 at 1:30 p.m. via Zoom video to address how to proceed against JC Steel.

**BACKGROUND**

## I.    FACTUAL ALLEGATIONS

Blackhawk is a "distributor of third-party branded gift and reward cards providing the connection to a prepaid card partner (such as Mastercard prepaid cards)."  (Dkt. No. 1 ¶ 3.)  In

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

March 2021, Blackhawk entered into a contractual agreement with JC Steel, in which Blackhawk agreed to sell discounted reward cards to JC Steel (the "Rewards Card Agreement"). (Dkt. No. 1 ¶ 2 and at 14.) "Each time JC Steel placed an order for reward cards from March 2021 to July 2021, the order was conditioned upon JC Steel's agreement with the Rewards Card Agreement." (Dkt. No. 20 ¶ 7.) The agreement has an arbitration provision, providing:

> Any controversy or claim arising out of or in any way connected with this Agreement or the alleged breach thereof shall be resolved by one arbitrator, in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect in San Francisco, California and shall be held in the San Francisco Bay Area. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Costs of AAA will be shared equally by the parties.

(Dkt. No. 1 at 21 § 23.)

Blackhawk alleges JC Steel agreed "it would not resell the rewards cards to third parties and would instead give the rewards cards to JC Steel customers as part of the company's loyalty and promotional programs." (*Id.* ¶ 2.) However, Blackhawk asserts "JC Steel had been placing orders for Cards for CSI's business use in breach of the Rewards Card Agreement." (*Id.* ¶ 3.) "JC Steel and CSI conspired together to unlawfully resell the reward cards [purchased from Blackhawk] to CSI," then "CSI used the discounted reward cards as an end user to purchase iPhones to ship overseas," and "JC Steel and CSI divvied up the profits at the expense of Blackhawk." (*Id.* ¶ 3.)

After Blackhawk accused JC Steel of breaching the agreement, "Blackhawk charged JC Steel the difference between the cost of the discounted reward cards and the full value of the reward cards." (*Id.* ¶ 4.) Specifically, "JC Steel originally purchased approximately $15 million in reward card value for $13.5 million," but after Blackhawk discovered the scheme, JC Steel was charged $15 million, or the actual value of the reward cards purchased. (*Id.*)

## II.     WASHINGTON STATE LITIGATION

On July 18, 2022, CSI filed a lawsuit in Spokane County, Washington, alleging claims of conversion, unjust enrichment, and violation of Washington's Consumer Protection Act against

United States District Court
Northern District of California

2

Blackhawk and JC Steel.[2] (Dkt. Nos. 1 ¶ 5; 22 at 4-9.)  CSI alleges Blackhawk "sold prepaid cards" to JC Steel while representing "that Blackhawk cards could be used for 'anything.'" (Dkt. No. 22 at 5.)  JC Steel then "represented" to CSI "that Blackhawk cards could be used for 'anything.'" (*Id.* at 5-6.)  "In or about February 2021, [CSI] began purchasing millions of dollars of Blackhawk cards through JC Steel" and CSI "used the prepaid cards to purchase iPhones at Apple.com for international resale." (*Id.* at 6.)  "In early July 2021, [CSI] provided $2,272,725 to JC Steel for gift card purchases," and "JC Steel forwarded" that money "to Blackhawk for purchase of $2,497,500 worth of gift cards." (*Id.*)  "On or about July 12, 2021, Blackhawk informed [CSI] that it was holding [CSI's] $2,272,725 and that it would neither provide an equivalent amount in gift cards nor would it return" the money." (*Id.*)  "Ultimately, Blackhawk refunded to JC Steel $688,646, which JC Steel in turn returned to" CSI, though Blackhawk has not returned the remaining $1,584,079. (*Id.*)

CSI's original complaint focused on two transactions: (1) Blackhawk had not returned $1,584,079 to CSI; and (2) Blackhawk canceled the balance of more than $50,000 in cards previously issued to CSI. (Dkt. No. 1 at 101 ¶ 3.13.)  So, CSI's complaint involved both money paid to Blackhawk for gift cards that were never delivered as well as gift cards which were purchased and redeemed but had their balance canceled.

Blackhawk moved to compel arbitration in the Washington state case. (Dkt. No. 22 at 11-31.)  Blackhawk's first motion to compel arbitration focused exclusively on the "Accountholder Agreement" between Metabank and CSI—it did not mention any other agreements or arbitration clauses. (*Id.* at 27.)  Blackhawk argued CSI "agreed to the terms of the Accountholder Agreement" which contained an arbitration clause. (*Id.* at 25.)  Blackhawk explained "[f]or activation of each of the reward cards, [CSI] was presented with the" Accountholder Agreement,

---

[2] CSI requests the Court take judicial notice of (1) the complaint CSI filed in Washington Court in *Computer Services, Inc. v. Blackhawk Network, Inc.*, Case No. 22-2-02349-32; (2) The motion to dismiss or, in the alternative, motion to compel arbitration filed by Blackhawk in Case No. 22-2-02349-32; (3) The order denying Blackhawk's motion to compel arbitration in Case No. 22-2-02349-32 entered on or about April 21, 2023; (4) The order denying Blackhawk's motion to compel arbitration in Case No. 22-2- 02349-32 entered on or about July 28, 2023. (Dkt. No. 22.) The Court judicially notices these documents.

United States District Court
Northern District of California

and CSI had to check a box indicating acceptance of the agreement to activate the rewards cards. (*Id.* at 27.)   The Accountholder Agreement's arbitration clause indicated the "Arbitration Clause governs any dispute arising under this Agreement, aside from the validity and scope of this Arbitration Clause."  (*Id.* at 28.)

CSI filed a response indicating CSI voluntarily dismissed "all claims relating to the $50,000 balance in cards that was previously issued by Blackhawk." (Dkt. No. 25-2 at 12 n.2.) So, the only dispute remaining in the Washington litigation was the $1,584,079 in Blackhawk's possession—money which CSI paid to Blackhawk to purchase rewards cards (though CSI did not receive any rewards cards for that payment).  Accordingly, CSI contended the Accountholder Agreement was irrelevant to the dispute, as CSI had not redeemed any cards related to the dispute.

The Court denied Blackhawk's motion to compel arbitration on April 21, 2023, holding there was "no basis to compel arbitration in this matter."  (Dkt. No. 22 at 33-35.)

A few weeks later, Blackhawk again moved to compel arbitration or, in the alternative, stay CSI's claims.  (Dkt. No. 22 at 37; *see also Computer Services Inv. C. Blackhawk Network Inc.*, Case No. 2220234932 (Wash. Superior Ct., Spokane County, Dkt. No. 41).)  This time, Blackhawk focused on "the contract between Blackhawk and JC Steel"—the same Rewards Card Agreement Blackhawk now seeks to use to compel arbitration.[3]  *Computer Services Inv. C. Blackhawk Network Inc.*, Case No. 2220234932 (Wash. Superior Ct., Spokane County, Dkt. No. 41 at 1.))

The Washington state court again denied the motion to compel arbitration, explaining "[a]s previously ordered on April 21, 2023, there is no basis to compel arbitration in this matter" as CSI's "claims against Blackhawk Network, Inc. are not subject to arbitration."  (Dkt. No. 22 at 38.)  However, the court stayed the case "pending the outcome of the AAA Arbitration between J.C. Steel and Blackhawk."  (*Id.*)

---

[3] While the record before the Court is not entirely clear, at oral argument Blackhawk confirmed its second motion to compel arbitration was based upon the same Rewards Card Agreement on which it bases its motion here.

United States District Court
Northern District of California

## III.   ARBITRATION

On May 2, 2023, Blackhawk initiated an arbitration proceeding with the American Arbitration Association ("AAA") in San Francisco, California, making claims against both CSI and JC Steel.  (Dkt. No. ¶ 1.)  Blackhawk seeks a declaration it is entitled to retain the $1,571,590.52—which it asserts is the difference between the full value and discounted value of the reward cards JC Steel improperly resold to CSI.[4]  (Dkt. No. 1 at 45.)  CSI has objected to the arbitrability of Blackhawk's claims against CSI and has refused to participate in the arbitration. (*Id.* ¶ 8.)  "JC Steel initially participated in the [] Arbitration, but then voluntarily dissolved one day after the preliminary hearing and is now refusing to participate."  (*Id.* ¶ 9.)  Blackhawk asserts JC Steel "is attempting to circumvent its responsibilities under the Reward Cards Agreement by dissolving yet continuing its operation through a new Washington corporation with a nearly identical name."  (*Id.* ¶ 10.)   The arbitrator "has stayed the arbitration to allow a reasonable time for Blackhawk to seek a court order compelling CSI and JC Steel to participate."  (*Id.* ¶ 11.)

## DISCUSSION

## I.   BLACKHAWK'S MOTION TO COMPEL CSI TO ARBITRATION

"A federal court must give to a state court judgment the same preclusive effect as would the courts of the state in which it was rendered"—which, in this case, is Washington.  *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir. 2003).  CSI asserts Blackhawk is precluded from seeking to compel arbitration against CSI because a Washington state court "twice denied similar motions filed by Blackhawk seeking to compel arbitration of its dispute with CSI" and "Blackhawk is bound by the preclusive effect of those orders."  (Dkt. No. 21 at 8.)

Issue preclusion and claim preclusion "are equitable doctrines that preclude relitigation of already determined causes."  *Reeves v. Mason Cnty.*, 22 Wash. App. 2d 99, 110 (2022). "Collateral estoppel," or issue preclusion, "precludes relitigation of issues."  *Id.*   "[C]laim

---

[4] CSI maintains Blackhawk owes CSI $1,584,079—which it calculates as the $2,272,725 it paid Blackhawk minus the $688,646 Blackhawk refunded.  (Dkt. No. 22 at 6.)  Blackhawk asserts the dispute between the parties relates to only $1,571,590.52, as it "refunded to JC Steel all funds . . . with the exception of the Discounted Amount ($1,571,590.52.)".  (Dkt. No. 1 ¶¶ 18, 43.)  The parties do not clarify the reason for the approximately $12,500 difference in the two totals.

United States District Court
Northern District of California

preclusion, 'acts to prevent relitigation of claims that were or should have been decided among the parties in an earlier proceeding.'" *Fortson-Kemmerer v. Allstate Ins. Co.*, 198 Wash. App. 387, 393 (2017), *as amended on denial of reconsideration* (June 15, 2017) (*quoting Norris v. Norris*, 95 Wash. 2d 124, 130 (1980)).

### A.    Issue Preclusion

Washington courts "employ[] a four-part test to determine whether previous litigation should be afforded" issue preclusive "effect in a subsequent litigation:" "The party asserting [issue preclusion] must prove (1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied. *Reeves*, 22 Wash. App. 2d at 111 (citing *State v. Harrison*, 148 Wash. 2d 550, 561 (2003)).

CSI has not met its burden of establishing issue preclusion bars Blackhawk's motion to compel arbitration. In the first motion to compel arbitration in the Washington state case, Blackhawk attempted to compel arbitration according to the Accountholder agreement, whereas in this case Blackhawk seeks to compel arbitration according to the Rewards Card Agreement. While, at oral argument, the parties indicated Blackhawk's second motion to compel arbitration in the Washington state case was based on the Rewards Card Agreement, neither party has provided copies of the briefing from the second motion to compel arbitration and the Washington state court's order does not indicate the basis for the motion to compel. So, CSI has not established the issue decided by the Washington court is identical to the one presented here.

### B.    Claim Preclusion

Claim preclusion "prohibits the relitigation of claims that were litigated or could have been litigated in a prior action." *Id.* at 115. "The threshold requirement of [claim preclusion] is a valid and final judgment on the merits in a prior suit." *Hassan v. GCA Prod. Servs., Inc.*, 17 Wash. App. 2d 625, 633 (2021) (quoting *In re Marriage of Weiser*, 14 Wash. App. 2d 884, 903, 475 P.3d 237 (2020)). "Under Washington law, for the doctrine of [claim preclusion] to apply, a prior

6

judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." *Reeves*, 22 Wash. App. 2d at 115 (citing *Rains v. State*, 100 Wash. 2d 660, 663 (1983) and *Eugster v. Washington State Bar Association*, 198 Wash. App. 758, 786 (2017)).  The party asserting claim preclusion bears the burden of proof in establishing it applies.  *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wash. 2d 853, 864 (2004).  Claim preclusion "generally applies to bar not only claims previously litigated but every claim that could have been litigated at that time." *Id.*  However, claim preclusion does not require the plaintiff "join every cause of action which is joinable when he brings a suit against a given defendant," instead, a judgment bars questions which were "*properly part of the matter in controversy*."  *Fortson-Kemmerer*, 198 Wash. App. at 394 (quoting *Seattle-First National Bank v. Kawachi*, 91 Wash. 2d 223, 225-28 (1978)).  The "four required identities . . . enable [courts] to determine whether a question was 'properly a part' of an earlier matter in controversy." *Id.*

### 1. Valid and Final Judgment on the Merits

In Washington, "a final judgment 'includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *In re Dependency of H.S.*, 188 Wash. App. 654, 661, 356 P.3d 202, 205 (2015) (quoting *Cunningham v. State*, 61 Wash. App. 562, 567 (1991)).  Washington "courts . . .  employ a pragmatic approach to determine finality."  *Cunningham*, 61 Wash. App. at 566.  "Factors for a court to consider in determining whether the requisite firmness is present include whether the prior decision was adequately deliberated, whether it was firm, rather than tentative, whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or in fact was reviewed on appeal." *Id.* (citing Restatement (Second) of Judgments § 13, cmt. g (1982)).

The Court holds the Washington state court's order denying arbitration is a final order for purposes of claim preclusion under Washington law.  In Washington, an appeal of an order denying a motion to compel arbitration may be filed as a matter of right under Washington Rules of Appellate Procedure 2.2(a)(3), which provides "[a]ny written decision affecting a substantial

United States District Court
Northern District of California

right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action" is appealable.  Wash. R. App. P. 2.2(a)(3).  "A court decision that discontinues an 'action' for arbitration falls within the meaning of [Washington Rules of Appellate Procedure] 2.2(a)(3) because it involves issues wholly separate from the merits of the dispute and because an effective challenge to the order is not possible without an interlocutory appeal." *Stein v. Geonerco, Inc.*, 105 Wash. App. 41, 44 (2001); *see also Cox v. Kroger Co.*, 2 Wash. App. 2d 395, 406 (2018) ("A ruling denying a motion to compel arbitration is appealable as a matter of right under [Washington Rules of Appellate Procedure] 2.2(a)(3) because it involves issues wholly separate from the merits of the dispute and because an effective challenge to the order is not possible without an interlocutory appeal." (cleaned up)).  Washington Rules of Appellate Procedure 5.2(a) provides an appeal must be filed within 30 days of entry of the order being appealed.  Wash. R. App. P. 5.2(a).  The Washington court's orders denying arbitration were issued on April 21, 2023 and July 28, 2023, so Blackhawk had until late August 2023, at the latest, to appeal the Washington state court's denial of its motions to compel arbitration.  However, Blackhawk did not appeal the Washington court's orders.  So, both denials of the motions to compel arbitration are final.

While the orders denying the motion to compel arbitration did not resolve the entire case, the orders were final for purposes of claim preclusion because they were final decisions as to the question of the claims' arbitrability.  Because the "objective" of a motion to compel arbitration "is to initiate a *separate* action in the forum of arbitration, a "[d]enial of a motion to compel arbitration effectively discontinues such action." *Stein*, 105 Wash. App. at 44.  Accordingly, an order denying a motion to compel arbitration "is upon an action separate from any related proceeding." *Id.*; *see also Key Bank, N.A. v. Atherton*, 22 Wash. App. 2d 1059 (2022) (unpublished) ("Consistent with the application of [Washington Rules of Appellate Procedure] 2.2(a)(3), the court's ruling here that 'the motions are denied' had the similar impact of discontinuing the action for arbitration. Therefore, in this context, the court's order denying arbitration at this point in the litigation was a final decision."), *review denied sub nom. Key Bank v. Atherton*, 200 Wash. 2d 1024 (2023), *and cert. denied*, 143 S. Ct. 2611 (2023).   The Ninth

8

Circuit has held an "order compelling arbitration is 'sufficiently firm to be accorded conclusive effect' and is entitled to full faith and credit" under California law because "an order compelling arbitration is the final order in a special proceeding" as "[o]nce the order is made, the special proceeding is complete and the arbitration must proceed" and the "trial court will not revisit the issue." *Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 713 (9th Cir. 1992) (quoting *Sandoval v. Superior Court*, 140 Cal. App. 3d 932, 936 (1983)). The same reasoning applies to motions to compel arbitration under Washington law. So, the Court holds orders denying arbitration are final decisions for purposes of claim preclusion under Washington law.

While no Washington appellate court has addressed whether an order denying a motion to compel arbitration is a final judgment for purposes of issue or claim preclusion, several other courts have held orders denying motions to compel arbitration are final decisions for purposes of claim preclusion. For example, in *Towers, Perrin, Forster & Crosby, Inc. v. Brown*, the Third Circuit "conclude[d] for several reasons that the California Supreme Court would hold that the order denying arbitration was a final order, and that res judicata applies." 732 F.2d 345, 348 (3d Cir. 1984). The court explained "the decision that a dispute is or is not arbitrable is conclusive of that issue." *Id.* Further, the plaintiff before the Third Circuit had already appealed the California state order compelling arbitration and lost that appeal, and because the "determination of non-arbitrability ha[d] been upheld on direct appeal," it "could not be reviewed again on appeal from a determination of the merits of the dispute" so the order was "free from attack on appeal." *Id.* at 349 (cleaned up). The court acknowledged the "merits of the dispute ha[d] not yet been decided," but held the "finality of the order entered in the special proceeding"—there, a special proceeding denying a motion to compel arbitration—"is not undermined by the fact that the outcome of the dispute itself must be resolved by a separate action." *Id.*; *see also Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1545 (10th Cir. 1996) ("[I]nterlocutory orders denying arbitration have been deemed final and preclusive for res judicata purposes."); *Pearson v. Clackamas Cnty.*, No. 3:12-CV-00720-BR, 2012 WL 13239943, at *5 (D. Or. Nov. 14, 2012) ("[V]arious federal courts have held under similar circumstances that orders denying motions to compel arbitration are

9

final decisions for purposes of res judicata or claim preclusion in a federal proceeding."). The Court concludes the Washington courts would follow this approach.

Blackhawk argues the "Washington Court Orders are not judgments on the merits because a decision on a motion to compel arbitration is not a final judgment on the merits." (Dkt. No. 25 at 6.) But, "[d]etermining whether there is a final judgment on the merits requires courts to consider whether the claim was properly resolved on the merits opposed to procedural grounds." *Campbell*, 14 Wash. App. 2d at 776–77. Blackhawk does not argue the Washington state court decided the motion to compel arbitration on procedural, rather than substantive grounds. Nor is there any evidence the decision was based on procedural grounds. So, the Court finds it was a final decision on the merits of the arbitration question and therefore sufficient for claim preclusion.

Blackhawk's cited cases are unpersuasive. In *Lotsoff v. Wells Fargo Bank, N.A.*, the plaintiffs argued Wells Fargo was "collaterally estopped from compelling arbitration because a California court ha[d] previously held the Arbitration Agreement at issue [wa]s unenforceable." No. 18-CV-02033-AJB-JLB, 2019 WL 4747667, at *4 (S.D. Cal. Sept. 30, 2019). In deciding whether to apply offensive issue preclusion, the court held "a decision on a motion to compel arbitration is not a final judgment on the merits that gives rise to collateral estoppel," citing *Pearson v. P.F. Chang's China Bistro*, 2015 WL 12910914 at *12 n.4 (S.D. Cal. Feb. 23, 2015) ("[T]he Court is persuaded by Defendant's argument that a decision on a motion to compel arbitration is not a final judgment on the merits that gives rise to collateral estoppel."). *Id.* Neither *Pearson* nor *Lotsoff* provides any reasoning as to why a decision on a motion to compel arbitration is not a final judgment on the merits for purposes of claim or issue preclusion and they did not address the Ninth Circuit law suggesting otherwise. *See Se. Res. Recovery Facility Auth.*, 973 F.2d at 713. Blackhawk also cites *Ruiz v. Sysco Food Servs.*, 122 Cal. App. 4th 520, 531 (2004), a California state case which held "the trial court was not required or allowed to accord any collateral estoppel effect to the federal district court's remand order, which was not a final judgment but rather a procedural order concerning the appropriate forum." *Ruiz*, 122 Cal. App. 4th at 531-32. But *Ruiz* does not address whether an order denying arbitration is a final order for

purposes of issue or claim preclusion.

So, CSI has met its burden of establishing the Washington court's order denying Blackhawk's motion to compel arbitration was a valid and final judgment on the merits for the purposes of claim preclusion regarding arbitrability.

### 2.     Required Identities

As discussed above, for claim preclusion to apply, "a prior judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." *Reeves*, 22 Wash. App. 2d at 115 (citing *Rains v. State*, 100 Wash. 2d 660, 663 (1983) and *Eugster v. Washington State Bar Association*, 198 Wash. App. 758, 786 (2017)).

### a.     Subject Matter

While "Washington law does not specify how precise the subject matter in the first and second suit must coincide," Washington courts have found the subject matter to be the same for purposes of claim preclusion when the underlying facts and theories of recovery in the two suits are the same. *Eugster v. Washington State Bar Ass'n*, 198 Wash. App. 758, 787 (2017) (disciplinary proceeding against attorney involved the same subject matter as attorney's later lawsuit claiming the disciplinary process violated due process). Moreover, "some differences in the legal theory asserted or in the facts alleged to support recovery do not necessarily rob a prior adjudication of preclusive effect." *Marshall v. Thurston Cnty.*, 165 Wash. App. 346, 356 (2011).

Here, the subject matter between the two disputes is the same: in the Washington action, Blackhawk moved to compel CSI to arbitration, and Blackhawk seeks to do the exact same thing in this action. Moreover, both actions arise from the same underlying set of facts, involving CSI's purchase of reward cards from JC Steel, who purchased the cards from Blackhawk. At oral argument, Blackhawk conceded its compulsory counterclaims in the Washington state case are the same claims it is making in arbitration—indicating the two actions involve the same factual background. Blackhawk also agreed the $1,584,079 in dispute in the Washington case is also in dispute in the arbitration proceedings—indeed, Blackhawk's first count in its "Statement of Claim" in the arbitration proceedings is for "Declaratory Relief," and asks the arbitrator to declare

United States District Court
Northern District of California

Blackhawk can keep the $1,584,079 that is the subject of the Washington state court litigation. (Dkt. No. 1 at 41 ¶¶ 39-45.)

Blackhawk asserts the "issue resolved by the Washington Court Orders [is] not identical, for purposes of preclusion," to the current dispute because the Washington court litigation resolved "the arbitrability of CSI's claims against Blackhawk, for conversion and unjust enrichment, relating solely to the $1,584,079 given to Blackhawk for the purchase of Reward Cards," whereas the claims raised in the AAA Arbitration "relate to the fraudulent scheme, which CSI conspired to with JC Steel, that involved the purchase of $15 million of the Rewards Cards sold by Blackhawk over the course of several months." (Dkt. No. 25 at 5.) But the factual background of both disputes is identical. Indeed, the $1,584,079 CSI seeks to recover is the disputed amount between the parties because Blackhawk alleges CSI was part of the allegedly fraudulent scheme and therefore Blackhawk is entitled to that $1,584,079.

Blackhawk cites *Scholz v. Washington State Patrol*, arguing "[t]o be identical, 'the issue must have been "actually litigated and necessarily determined" in that proceeding." (Dkt. No. 42 at 3 (citing *Scholz*, 3 Wash. App. 2d 584, 594-95 (2018).) But *Scholz* addressed issue preclusion—not claim preclusion—which requires "the issue decided in the earlier proceeding" be "identical to the issue presented in the later proceeding." *Scholz*, 3 Wash. App. 2d at 594. So, even if the *issues* are not identical the subject matter can be the same for purposes of Washington law.

Blackhawk also cites *Strand v. L.D. Trucking & Excavating, Inc.*,[5] asserting "preclusion attaches to a determination only if it was necessarily decided." (Dkt. No. 42 at 4 (citing 105 Wash. App. 1053 (2001), 2001 WL 372107.) But, *Strand,* like *Scholz*, involved issue preclusion, not claim preclusion. Indeed, *Strand* itself makes this distinction, explaining "[u]nder the doctrine

---

[5] *Strand* is an unpublished opinion. Pursuant to WA GR 14.1(a), "[u]npublished opinions of the Court of Appeals have no precedential value and are not binding upon any court," but those filed "on or after March 1, 2013, may be cited as non-binding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate." The opinion was filed in 2001, so it lacks even persuasive value. Nevertheless, because Blackhawk raised the case the Court addresses it to be thorough. The case itself did not impact the Court's analysis or holding.

of res judicata (claim preclusion), a claim that could have been decided in a prior action and was not raised cannot be raised in a subsequent action," whereas issue preclusion "precludes only those issues that have been actually litigated and determined and does not operate as a bar to matters that could have then been raised but were not." *Strand*, 2001 WL 372107 at *4. So, *Strand* is inapposite.

Finally, Blackhawk cites *Richert v. Tacoma Power Utility*, for the proposition there can be no claim preclusion when "the subject matters between the two actions were not identical as they involve[] different rights." (Dkt. No. 42 at 3 (citing *Richert*, 179 Wash. App. 694, 707 (2014)).) *Richet* involved "a lawsuit [against the city of Tacoma] for property damage caused by increased water flow," where the city of Tacoma asserted the lawsuit was barred by "a 1920 condemnation action in which Tacoma condemned [the plaintiffs'] riparian and water rights so as to allow Tacoma to build two dams" on a particular river. *Richert*, 179 Wash. App. at 696-97. The court held claim preclusion did not bar the second action because, in the previous suit "Tacoma condemned the right to take away the use of the [plaintiffs' property's] water, but it did not condemn the right to invade [those properties] with water." *Id.* at 705. Accordingly, the court held the defendant failed to establish "concurrence of identity of subject matter because "the Richerts' alleged invasion of water onto their parcels does not have the same subject matter with the claims litigated to a final judgment in [the previous case]" because the previous case's "final judgment dealt with only deprivation of the parcels' water use, rather than flood or groundwater damage to the parcels themselves." *Id.* at 706-07. However, in this case, the Washington state court action and the present action deal with the exact same right—the right to compel CSI to arbitrate the reward card dispute—and the Washington state court's final action in denying Blackhawk's motion addressed exactly that issue. *Richert* does not hold to the contrary.

Both the Washington case and the instant motion relate to Blackhawk's attempts to compel CSI to arbitration based on the same set of facts. Accordingly, the Court holds CSI has established the unity of subject matter between the two actions.

### b.    Cause of Action

As to the second unity—cause of action—"[t]o determine whether causes of action are

identical, courts consider whether (1) prosecuting the second action would destroy rights or interests established in the first judgment, (2) the evidence presented in the two actions is substantially the same, (3) the two actions involve infringement of the same right, and (4) the two actions arise out of the same transactional nucleus of facts." *Hassan*, 17 Wash. App. 2d at 635 (quoting *Marshall*, 165 Wash. App. at 354). "All four elements need not be present to bar the second legal action." *Eugster v. Washington State Bar Ass'n*, 198 Wash. App. 758, 789 (2017).

First, the "rights or interests established" in the Washington state court order denying Blackhawk's motion to compel arbitration would be impaired if this court proceeded to consider the merits of Blackhawk's arguments. Specifically, the Washington court determined there was no basis to compel CSI to arbitration, and an order by this Court finding the opposite would impair CSI's interest as established by that order. So, the first factor is met.

Second, the evidence presented in the two actions is substantially the same—Blackhawk seeks to compel arbitration due to the Rewards Card Agreement, which is exactly what it sought to do in its second motion to compel arbitration in Washington state court. Moreover, the exact same underlying facts gave rise to the Washington state court action and this action.

Third, the two actions involve infringement of the same right, namely, CSI's right to a court forum rather than arbitration. The same law applies to Blackhawk's motion to compel arbitration in both forums, and the underlying claim is the same across the forums. So, the third factor weighs in favor of finding unity in the causes of action.

Fourth, the two actions arise out of the same transactional nucleus of facts. Both lawsuits are premised on CSI buying Blackhawk's rewards cards through JC Steel.

So, CSI has established the required identity in the causes of action.

### c.    Persons and Parties and Quality of the Persons for or Against Whom the Claim is Made

Because the parties in the two actions are identical, both the "persons and parties" and "quality of the persons" required identities are established. *DeYoung v. Cenex Ltd.*, 100 Wash. App. 885, 893 (2000) ("Finally, the third and fourth factors—identity of parties and persons against whom the claims are made—are satisfied because the parties and persons in this appeal are

United States District Court
Northern District of California

14

identical.").

* * *

In sum, the Court holds the Washington court orders denying Blackhawk's motion to compel arbitration were final decisions on the merits, and CSI has established the four requisite identities for claim preclusion to apply.

In its reply, Blackhawk asserts if it is "precluded from seeking to compel CSI to arbitrate, it will be unjust," so the Court should not hold claim preclusion bars Blackhawk's motion. (Dkt. No. 25 at 6.) Because claim preclusion is "an equitable, common law doctrine," it is "is not to be applied so rigidly as to defeat the ends of justice, or to work an injustice." *Weaver v. City of Everett*, 194 Wash. 2d 464, 482 (2019) (quoting *Henderson v. Bardahl Int'l Corp.*, 72 Wash. 2d 109, 119 (1967)). Blackhawk asserts preventing its ability to compel CSI to arbitration is an injustice because it would deny Blackhawk its "day in court." (Dkt. No. 25 at 6 (citing *Luisi Truck Lines, Inc. v. Washington Utilities & Transp. Comm'n*, 72 Wash. 2d 887, 894, (1967)). Blackhawk has not identified any reason why it is unable to litigate its claims fairly and fully in Washington state court. Indeed, Blackhawk fails to explain what prevented Blackhawk from moving to compel arbitration in the Washington case based on the agreement it seeks to enforce in this action the first time it moved to compel arbitration, nor has Blackhawk explained why it failed to appeal the Washington state court's orders. Allowing Blackhawk a third opportunity and second forum to seek to compel CSI to arbitration would undermine the finality of the Washington court orders and be an inefficient use of the parties' and courts' resources since this claim has already been decided by a competent court. *See Emeson v. Dep't of Corr.*, 194 Wash. App. 617, 626 (2016) (claim preclusion "promotes judicial economy, efficiency, and fairness to litigants"). So, Blackhawk has failed to establish any injustice that will be caused by enforcing the Washington state court's orders.

Accordingly, the Court DENIES Blackhawk's motion to compel CSI to arbitration, as its motion is precluded by the Washington court's previous orders.

**CONCLUSION**

For the reasons explained above, the Court DENIES Blackhawk's motion to compel CSI to

15

arbitration.  As JC Steel has not appeared in this action, and Blackhawk has not yet obtained its default, the Court sets an initial case management conference for August 8, 2024 at 1:30 p.m. to address how Blackhawk intends to proceed against JC Steel.  A joint (to the extent possible) case management conference statement is due August 5, 2024.

This order resolves Dkt. No. 18.

**IT IS SO ORDERED.**

Dated: July 30, 2024

JACQUELINE SCOTT CORLEY
United States District Judge