1

2

3

4            UNITED STATES DISTRICT COURT

5           NORTHERN DISTRICT OF CALIFORNIA

6

7   BLACKHAWK NETWORK, INC.,                 Case No.  3:23-mc-80303-JSC

                 Petitioner,
8
                                             **ORDER RE: MOTION FOR DEFAULT
9        v.                                  JUDGMENT**

10  COMPUTER SERVICES, INC., et al.,          Re: Dkt. No. 51

                 Respondents.
11

12

13          Blackhawk Network, Inc. ("Blackhawk") filed a petition and motion to compel JC Steel

14  Targets, Inc. ("JC Steel") to arbitrate.  (Dkt. Nos. 1, 18.)[1]  The clerk entered JC Steel's default

15  after it failed to appear or otherwise defend against this case.  (Dkt. No. 50.)  Blackhawk's motion

16  for default judgment is now pending before the Court.  (Dkt. No. 51.)  After carefully considering

17  Blackhawk's written submissions, the Court GRANTS Blackhawk's motion for default judgment

18  against JC Steel as explained below.

19                          **BACKGROUND**

20  **A.      Factual Allegations**

21          The Court previously detailed the petition allegations and the Washington state litigation

22  involving Blackhawk and JC Steel (Dkt. No. 45 at 2-4), and the Court adopts that description by

23  reference here.[2]

24

25

26  [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
    ECF-generated page numbers at the top of the documents.
27  [2] In August 2024, after the Court issued its order, the Spokane County Superior Court lifted the
    stay, resuming litigation.  Blackhawk renewed its counterclaims against Computer Services and its
28  crossclaims against JC Steel.  *Computer Services v. Blackhawk Network Inc.*, No. 2220234932
    (Wash. Superior Ct., Spokane County, Dkt. Nos. 62, 65).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    **B.**    **Procedural Background**

2    On November 14, 2023, Blackhawk petitioned the Court for an order compelling

3 Computer Services, Inc. ("CSI") and JC Steel to arbitration.  (Dkt. No. 1.)  Blackhawk

4 subsequently filed a motion to compel arbitration.  (Dkt. No. 18.)  The Court denied Blackhawk's

5 motion to compel arbitration against CSI on claim preclusion grounds.  (Dkt. No. 45 at 1.)

6 Because "JC Steel ha[d] not appeared in the action, and Blackhawk ha[d] not yet obtained its

7 default," the Court set a status conference "to address how to proceed against JC Steel."[3]  (*Id.*)

8 The Court vacated the status conference upon learning Blackhawk anticipated moving for default

9 judgment.  (Dkt. Nos. 47-49.)

10    On August 7, 2024, Blackhawk moved for entry of default as to JC Steel, and the clerk

11 entered default.  (Dkt. Nos. 48, 50.)  Blackhawk subsequently filed the pending motion for default

12 judgment.  (Dkt. No. 51.)  JC Steel has not responded.  (Dkt. No. 55.)

13    **DISCUSSION**

14    After entry of default, a party may apply to the court for default judgment on the merits

15 when a party has failed to plead or defend itself.  Fed. R. Civ. P. 55(b)(2).  The complaint's factual

16 allegations, except those relating to damages, are deemed to be admitted by the non-moving party

17 and accepted as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

18 To decide if default judgment should be granted, courts analyze two considerations.  First, courts

19 have an affirmative duty to examine subject-matter jurisdiction, personal jurisdiction, venue, and

20 service of process as to claims against a non-appearing party when default judgment is sought.  *In*

21 *re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Second, courts in the Ninth Circuit may then exercise

22 discretion in deciding whether default judgment is appropriate, applying the *Eitel* factors.  *Eitel v.*

23 *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

24    **I.**    **JURISDICTION & SERVICE OF PROCESS**

25    This Court has both subject-matter and personal jurisdiction over Blackhawk's motion to

26

27 _____

[3] Claim preclusion is not an issue here.  In the Spokane litigation, Blackhawk never moved to compel JC Steel to arbitration.  (Dkt. No. 22 at 11-31, 37-38.)  So, there is no "valid and final

28 judgment on the merits in a prior suit" to warrant claim preclusion as to JC Steel.  *See Hassan v. GCA Prod. Servs., Inc.*, 17 Wash. App. 2d 625, 633 (2021).

1    compel arbitration, and Blackhawk properly served JC Steel.

2                  **A.      Subject-Matter Jurisdiction**

3            Blackhawk petitioned this Court for an order compelling arbitration pursuant to the Federal

4    Arbitration Act ("FAA").  (Dkt. No. 1.)  "[T]he proponent of arbitration may petition for an order

5    compelling arbitration in 'any United States district court which, save for [the arbitration]

6    agreement, would have jurisdiction under title 28 in a civil action . . . of the subject matter of a suit

7    arising out of the controversy between the parties.'"  *Vaden v. Discover Bank*, 556 U.S. 49, 62

8    (2009) (quoting 9 U.S.C. § 4).  Thus, "a federal court should determine its jurisdiction by 'looking

9    through' a § 4 petition to the parties' underlying substantive controversy."  *Vaden*, 556 U.S. at 62.

10           Looking through the petition, Blackhawk alleges diversity jurisdiction under 28 U.S.C.

11   § 1332(a)(1), (Dkt. No. 1 ¶ 17), which grants jurisdiction if the matter in controversy exceeds

12   $75,000 and is between citizens of different states.  Both criteria are met here.  Blackhawk's

13   dispute with CSI and JC Steel involves $1,571,590.52.  (*Id.* ¶ 18.)  Blackhawk is "a corporation

14   duly organized and existing under the laws of the State of Arizona with its principal place office

15   located in Phoenix, Arizona."  (*Id.* ¶ 14.)  And "JC Steel is a corporation duly organized and

16   existing under the laws of the State of Washington with its principal place office located in

17   Spokane, Washington."  (*Id.* ¶ 16.)  Thus, the Court has subject-matter jurisdiction over the

18   petition.  *See* 9 U.S.C. § 4.

19                 **B.      Personal Jurisdiction**

20           The Court has specific personal jurisdiction over JC Steel through a forum selection

21   clause.  A defendant can expressly or impliedly consent to personal jurisdiction; for example,

22   "parties may consent to jurisdiction through a forum selection clause in a contract."  *S.E.C. v.*

23   *Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S.

24   311, 315-16 (1964)).  Here, the Reward Cards Agreement has a forum selection clause, stating,

25   "Any controversy or claim arising out of or in any way connected with this Agreement or the

26   alleged breach thereof shall be resolved by one arbitrator . . . in San Francisco, California and shall

27   be held in the San Francisco Bay Area."  (Dkt. No. 52-1 at 9.)  JC Steel accepted the agreement.

28   (Dkt. No. 1 ¶ 31.)  Further, JC Steel "initially participated" in the arbitration in California before

United States District Court
Northern District of California

1    voluntary dissolving.  (*Id.* ¶ 9.)  A forum selection clause "should control absent a strong showing

2    there it should be set aside."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

3    Because JC Steel has not appeared to challenge this forum section clause, the Court has personal

4    jurisdiction.

5              **C.       Service of Process**

6              On March 26, 2024, the magistrate judge to whom the case was then assigned issued an

7    order to show cause as to whether and on what grounds JC Steel had been properly served.  (Dkt.

8    No. 28.)  Upon consideration of Blackhawk's response, the magistrate judge discharged the order.

9    (Dkt. No. 34.)  As the magistrate judge determined, service was proper in this case.

10                                                     ***

11             Therefore, the Court has subject-matter and personal jurisdiction, and Blackhawk properly

12   served JC Steel.

13   **II.     DEFAULT JUDGMENT**

14             The Court may grant default judgment on the merits of the case after entry of default

15   judgment.  Fed. R. Civ. P. 55; *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The

16   district court's decision whether to enter a default judgment is a discretionary one.").  The district

17   court's discretion is guided by seven factors set forth in *Eitel*:

18             (1) the possibility of prejudice to the plaintiff; (2) the merits of
               plaintiff's substantive claim; (3) the sufficiency of the complaint; (4)
19             the sum of money at stake in the action; (5) the possibility of a dispute
               concerning material facts; (6) whether the default was due to
20             excusable neglect; and (7) the strong policy underlying the Federal
               Rules of Civil Procedure favoring decisions on the merits.
21

22   *Eitel*, 782 F.2d at 1471-72 ("*Eitel* factors").

23             The *Eitel* factors favor granting Blackhawk's motion for default judgment.

24             **A.       Possibility of Prejudice to Blackhawk**

25             Under the first factor, the Court considers whether and to what extent Blackhawk will

26   suffer prejudice, such as being left without a legal remedy, if the Court declines to grant default

27   judgment.  *See GS Holistic, LLC v. MSA-Bossy Inc.*, No. 22-CV-076638-JSC, 2023 WL 3604322,

28   at *3 (N.D. Cal. May 22, 2023).  "When a defendant fails to appear and defend its claims, the

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    plaintiff would be without recourse and suffer prejudice unless default judgment is entered."

2    *Gunn Pac. Reflection LLC v. Johnsen*, No. 2:18-CV-06842-ODW, 2019 WL 2501476, at \*2 (C.D.

3    Cal. June 17, 2019).

4         In this case, JC Steel ceased participating in the arbitration and has failed to appear in this

5    action.  (Dkt. No. 48-1 ¶ 9.)  Default judgment in the form of an order requiring arbitration will

6    allow a neutral third party to determine the dispute between Blackhawk and JC Steel over the

7    Reward Cards Agreement.  *See United Food & Commer. Workers Union v. Pine Ridge Treatment*

8    *Ctr., Inc.*, No. EDCV-21-2014, 2022 WL 2286484, at \*2 (C.D. Cal. Mar. 11, 2022) (finding

9    prejudice to the plaintiff because "[a]bsent a default judgment by this Court, [the defendant] . . .

10   will have avoided liability by not responding to the action.").  While there is litigation in the

11   Spokane County Superior Court, in that case—as in this case—JC Steel has not appeared.  As

12   such, there is a high likelihood Blackhawk will suffer prejudice if default judgment is not granted

13   because there is no other recourse for relief.  Thus, the first *Eitel* factor weighs in favor of granting

14   default judgment.

15        **B.    Merits of the Substantive Claim and Sufficiency of the Complaint**

16        The second and third factors, "often analyzed together," consider whether the facts as

17   pleaded in the petition address the merits and sufficiency of Blackhawk's claims.  *See Dr. JKL*

18   *Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  These factors require a

19   plaintiff to "state a claim on which the plaintiff may recover."  *PepsiCo, Inc. v. Cal. Security*

20   *Cans*, 238 F. Supp. 2d 1127, 1175 (C.D. Cal. 2002).  The Court "is not required to make detailed

21   findings of fact," because all well-pleaded allegations regarding liability are accepted as true.  *Fair*

22   *Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

23        Here, Blackhawk seeks an order compelling JC Steel to arbitrate pursuant to the Reward

24   Cards Agreement.  This Court's role in analyzing the merits of such a petition is limited to

25   considering: "(1) whether a valid agreement to arbitrate exists and if it does, (2) whether the

26   agreement encompasses the dispute at issue."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th

27   Cir. 2019) (citation omitted).  If the answer is yes "on both counts, then the [FAA] requires the

28   court to enforce the arbitration agreement."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d

United States District Court
Northern District of California

1   1126, 1130 (9th Cir. 2000).  Both criteria are met here.

2   **1.       Whether a Valid Agreement to Arbitrate Exists**

3   Blackhawk, "the party seeking to compel arbitration, must prove the existence of a valid

4   agreement by a preponderance of the evidence." *Wilson*, 944 F.3d at 1219.  Federal courts "apply

5   ordinary state-law principles that govern the formation of contracts" to determine if such an

6   agreement existed. *See id.* (citations omitted).  Accepting Blackhawk's allegations as true, its

7   petition establishes a valid arbitration agreement exists.  (Dkt. No. 1 ¶ 2.)

8   Blackhawk alleges it entered into a contractual agreement with JC Steel around March

9   2021.  Although the agreement was unsigned (Dkt. No. 51-1), Blackhawk sufficiently pleads JC

10  Steel accepted it electronically by purchasing the rewards cards; when a user creates an account,

11  the user must first bypass and electronically accept the agreement that pops open before ordering

12  cards.  (Dkt. No. 1 at 2, 94-97.)  Therefore, Blackhawk sufficiently pleads a valid arbitration

13  agreement exists.

14  **2.       Whether the Agreement Encompasses the Underlying Dispute**

15  The Court next analyzes whether the dispute "falls within the scope of the parties'

16  agreement to arbitrate." *Chiron Corp.*, 207 F.3d at 1131.  In light of the "federal policy favoring

17  arbitration agreements . . . 'any doubts concerning the scope of arbitrable issues should be

18  resolved in favor of arbitration.'" *Id.* (citing *Moses H. Cone Memorial Hosp. v. Mercury Const.*

19  *Corp.*, 460 U.S. 1, 24-25 (1983)).  The Reward Cards Agreement explicitly states, "[a]ny

20  controversy or claim arising out of or in any way connected with this Agreement or the alleged

21  breach thereof shall be resolved by one arbitrator, in accordance with the Commercial Arbitration

22  Rules of the American Arbitration Association." (*Id.* at 21.)  Blackhawk alleges JC Steel breached

23  a provision of the Reward Cards Agreement, which provides, "In no event may cards be resold or

24  offered for sale to consumers." (Dkt. No. 1 at 22 (capitalization removed).)  So, accepting

25  Blackhawk's allegations as true, Blackhawk sufficiently pleads the arbitration agreement

26  encompasses the dispute.

27  In sum, because a valid arbitration agreement exists, the agreement encompasses the

28  underlying dispute, and JC Steel has refused to participate in arbitration (Dkt. No. 1 ¶ 9), the

1    second and third *Eitel* factors favor granting Blackhawk's motion for default judgment.

2          **C.**      **Sum of Money at Stake**

3          The fourth *Eitel* factor considers the sum of money at stake relative to the seriousness of

4    the defendant's conduct.  *Eitel*, 782 F.2d at 1471-72.  Generally, this factor weighs against default

5    judgment when the sum of money is unreasonably large compared to the potential loss caused by

6    defendant.  *Id.*  Here, because Blackhawk is not seeking a monetary judgment, this factor weighs

7    in favor of granting default judgment.

8          **D.**      **Possibility of Dispute Concerning Material Facts**

9          The fifth *Eitel* factor considers whether the material facts are disputed.  *Eitel*, 782 F.2d at

10   1471-72.  The "well-pleaded facts" in the petition "are taken as true, except those relating to

11   damages."  *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Here, there are no damages, and as

12   described above, Blackhawk sufficiently pleads the existence of an arbitration agreement and its

13   applicability to the underlying dispute.  Further, Blackhawk's allegations are supported by

14   multiple exhibits.  *See, e.g.*, *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916,

15   922 (C.D. Cal. 2010) (finding no material factual dispute because the plaintiff "supported its

16   claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the

17   allegations in the complaint"); *United Food & Commerc. Workers Union*, 2022 WL 2286484, at

18   *3 (finding because defendant has not appeared or asserted any defenses, "disputes of material

19   facts are unlikely to arise").  Because no factual dispute exists to preclude default judgment, this

20   factor weighs in Blackhawk's favor.

21         **E.**      **Whether the Default Was Due to Excusable Neglect**

22         The sixth *Eitel* factor "favors default judgment where the defendant has been properly

23   served or the plaintiff demonstrates that the defendant is aware of the lawsuit."  *Wecosign, Inc. v.*

24   *IFG Holdings, Inc.*, 845 F. Supp. 1072, 1082 (C.D. Cal. 2012).  Blackhawk has demonstrated JC

25   Steel's awareness, as JC Steel initially responded to the arbitration request, and Blackhawk sent

26   the petition and summons to the same email address JC Steel used in its initial arbitration

27   engagement.  (Dkt. No. 17-5.)  Blackhawk also attempted to serve JC Steel multiple times.  (Dkt.

28   No. 17-2; Dkt. No. 17-4.)  Thus, Blackhawk has demonstrated JC Steel is aware of this lawsuit,

United States District Court
Northern District of California

1    and JC Steel's failure to appear is not the product of excusable neglect.  This factor favors entry of

2    default judgment.

3          **F.**      **Policy Favoring Decisions on the Merits**

4          Under the seventh *Eitel* factor, generally "default judgments are ordinarily disfavored" and

5    "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at

6    1472.  However, a defendant's failure to answer, let alone appear, "make[s] a decision on the

7    merits impractical, if not impossible."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  "Termination of a

8    case before hearing the merits is allowed whenever a defendant fails to defend an action."  *Id.*

9    Because JC Steel has failed to appear, making a decision on the merits impossible, this factor

10   weighs in favor of default judgment.

11                                 \*\*\*

12         In sum, all seven *Eitel* factors weigh in favor of granting Blackhawk's motion for default

13   judgment.

14   **III.**      **REQUESTED RELIEF**

15         Under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed

16   in amount, what is demanded in the pleadings."  Blackhawk requests this Court order JC Steel to

17   participate in arbitration with Blackhawk pursuant to the Reward Cards Agreement.  (Dkt. No. 51

18   at 10.)  This requested relief is the same as the prayer for relief listed in Blackhawk's petition for

19   an order compelling arbitration.  (Dkt. No. 1 ¶ 11.)  Accordingly, the Court does not exceed what

20   is demanded in the petition by ordering JC Steel to participate in arbitration.

21                             **CONCLUSION**

22         Blackhawk sufficiently pleads this Court has subject-matter and personal jurisdiction over

23   this case, it properly served JC Steel, and the *Eitel* factors weigh in favor of entering default

24   judgment for Blackhawk.  Therefore, this Court GRANTS Blackhawk's motion for default

25   judgment and compels JC Steel to arbitration.

26         This Order disposes of Docket No. 51.

27         **IT IS SO ORDERED.**

28   Dated: October 11, 2024

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
JACQUELINE SCOTT CORLEY
United States District Judge